IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Eugene Westmoreland, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -*vs*- | ) | No. 21-cv-4330 |
| | ) | |
| Thomas Dart, Sheriff of Cook County, Cook County, Illinois, Officer E. Arreguin (star 18273), and Nurse Jefferson, | ) | Judge Kennelly |
| | ) | |
| *Defendants.* | ) | |

## AMENDED COMPLAINT

Plaintiff Eugene Westmoreland, by counsel, and pursuant to leave of Court, dkt. 25, and alleges as follows:

1. This is a civil action arising under Section 202 of the Americans with Disabilities Act, 42 U.S.C. §12132, Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), and 42 U.S.C. § 1893. The jurisdiction of this Court is conferred by 28 U.S.C. §12133, 29 U.S.C. §794a(a)(2), and 28 U.S.C. § 1343.

2. Plaintiff had polio as a young child. As a result of this condition, plaintiff has significant weakness on his left leg and is significantly limited in the ability to move from place to place.

3. Defendant Thomas Dart is the Sheriff of Cook County. Under Illinois law, the Sheriff is responsible for prisoners remanded to his custody

and must make reasonable modifications to policies, practices, or procedures to accommodate physically disabled detainees.

4. Defendant Cook County, in collaboration with the Sheriff, is responsible for accommodating the needs of disabled prisoners remanded to the Sheriff of Cook County. Cook County, along with the Sheriff, is responsible for providing accessible living units to physically disabled detainees at Cook County Jail. Defendant Cook County also owns the Cook County Jail and the Leighton Courthouse and is responsible for making physical modifications to these buildings. Cook County is also a necessary party in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

5. Defendants Dart and Cook County have received federal financial assistance since at least 1988.

6. Defendant E. Arreguin (star 18273), at all relevant times, was employed by the Sheriff's Office and was assigned to be the tier officer in Division 10, Tier 2A on November 7, 2019 from 7:00 am to 3:00 pm.

7. Defendant Elizabeth Jefferson, at all relevant times, was employed by Cook County as a Licensed Practical Nurse.

8. Plaintiff was processed into the Cook County Jail on October 30, 2019 and was assigned booking number 2019-1030026. During the intake process plaintiff reported that he was a high fall risk due to

significant lower extremity weakness. It was also obvious that plaintiff was significantly limited in the program or activity of moving from place to place; the medical records document plaintiff had an obvious limp.

9. Plaintiff requires an accommodation to engage in everyday life activities such as toileting, bathing, sleeping, and moving from place to place because of his obvious physical impairment.

10. From October 30, 2019 until about 10:00 am on November 7, 2019, plaintiff was assigned to Division 8, Tier 3F. This dorm is designed to accommodate physically disabled inmates; a shower has a fixed bench to assist a disabled inmate shower, at least one toilet has grab bars to assist with toileting, and there are no bunk beds.

11. On November 7, 2019, jail officials decided to transfer plaintiff from Division 8, the accessible housing unit, to Division 10. At this point, jail officials knew that plaintiff was significantly limited in the ability to move from place to place. Plaintiff was told to gather his belongings and was escorted by a correctional officer to this new division.

12. While being transferred to Division 10, plaintiff Westmoreland had substantial difficulty moving and stumbled several times.

13. Plaintiff arrived at Division 10, Tier 2A at approximately 10:30 am. Upon reaching this tier, plaintiff observed that it was not accessible for a physically disabled inmate. Plaintiff told defendant Arreguin, the

assigned correctional officer on the 7am to 3 pm shift, that he required an accessible living unit. Defendant Arreguin, however, proceeded to assign plaintiff to cell 2107 and told plaintiff he would sleep on a top bunk.

14. Cell 2107 did not have any features accessible for a physically disabled inmate, like plaintiff. Plaintiff's assigned bed was a top bunk, and the toilet and sink were not accessible for a physically disabled person. Plaintiff complained to defendant Arreguin about the conditions and was told there was nothing he could do to accommodate plaintiff.

15. While in the cell, the plaintiff attempted to climb to the top bunk to engage in the program or activity of resting or sleeping. Plaintiff did not have the physical strength to make it to this bed, fell to the floor, and suffered significant personal injuries.

16. Defendant Arreguin knew that plaintiff fell and that he required medical attention because plaintiff's cellmate, Leron Wade, told him at about 1:30 pm. Defendant Arreguin and Defendant Nurse Jefferson told plaintiff that to receive medical treatment he must exit the cell on his own power. The plaintiff responded that he was unable to move because of significant pain. Neither defendant Jefferson nor defendant Arreguin took action to facilitate treatment for plaintiff and left him on the floor in his cell. It was obvious that plaintiff was in significant pain and required medical treatment.

17. At approximately 2:18 pm, defendant Arreguin knew plaintiff was still lying on his floor in need of medical treatment because he conducted a security check of all cells on Tier 2A and observed plaintiff. Despite knowing plaintiff was still on the floor and in need of medical attention defendant Arreguin took no action to facilitate any treatment for plaintiff.

18. Plaintiff remained on the floor of his cell for about two hours. The assigned tier officer on the next shift, Officer Ogrodnik, saw plaintiff on the floor at approximately 3:30 p.m. while conducting a security check. Officer Ogrodnik immediately contacted his supervisor and facilitated treatment for plaintiff.

19. Plaintiff was transferred to Cermak and was referred to Stroger Hospital. Plaintiff remained at Stroger Hospital from November 7, 2019 to November 26, 2019. While at Stroger, plaintiff was treated for several serious conditions including spinal surgery to repair damaged disks. As a result of this injury, plaintiff has relied almost exclusively on a wheelchair to move from place to place and continues to suffer pain.

**I.   ADA and Rehab Act claims against the Sheriff and Cook County**

20. At all relevant times, the Sheriff and Cook County knew plaintiff had a substantial impairment moving from place to place and required placement in an accessible living unit.

21. In April 2018, the Sheriff's ADA Compliance Officer prepared a business case, on behalf of the Sheriff's Office, notifying Cook County that "[h]aving no ADA compliant housing other than division 8 and Cermak, severely restricts our ability to house detainees in the most integrated setting while making sure they have access to accessible cells, toilets, and showers. This creates difficulties with bed control, and also leads to litigation." This business case also acknowledged that Division 10 is used to house detainees with mobility disabilities, but does not have ADA compliant cells, toilets, and showers.

22. On November 7, 2019, it was obvious that Division 10 was unable to accommodate plaintiff Westmoreland; he even told the assigned tier officer that the physical condition of the tier (including the cell) would not accommodate his disability.

23. Plaintiff's bed assignment deprived plaintiff from accessing the program or activity of sleeping on the same basis as other inmates.

24. Plaintiff suffered serious harm because of his assignment to a top bunk in Division 10.

25. The Sheriff and Cook County were deliberately indifferent to plaintiff's federally protected rights secured by the ADA and Rehabilitation Act. Each knew since at least April 2018 that a harm to a federally

protected right was substantially likely by placing inmates with mobility disabilities in Division 10 and failed to act upon that likelihood.

## II. Deliberate indifference against defendants Arreguin and Jefferson

26. As exampled above, each of defendants Arreguin and Jefferson knew plaintiff had a serious medical need and consciously failed to take reasonable measures to provide treatment for that serious medical need.

27. The actions by each defendant caused plaintiff to suffer additional prolonged pain.

28. Defendants Arreguin and Jefferson violated plaintiff's rights secured by the Fourteenth Amendment to the United States Constitution.

## III. ADA and Rehabilitation Act violations when attending the Leighton courthouse

29. Defendant Sheriff has knowns since at least April 19, 2014 that the Leighton Courthouse does not have any handicapped toilets for detainees and that detainees must move up and down a steep ramp to access the building.

30. From April 19, 2014, to the present, the Sheriff has failed to implement reasonable modifications to their policies, practices, or procedures to accommodate wheelchair-using detainees who attend Leighton.

31. Plaintiff has been required to roll up and down steep non-compliant ramps to reach the courthouse. Movement up these non-compliant ramps has cause plaintiff's hands to burn, upper body pain, and deprived plaintiff the ability to move to Leighton on a basis equal to that of a nondisabled inmate.

32. Nondisabled detainees attending court are held in a bullpen adjacent to the courtroom and have free access to a toilet and sink.

33. At Leighton, plaintiff is held in inaccessible areas and does not have access to an accessible toilet and sink. Defendants also do not provide plaintiff reasonable modifications to policies and procedures to provide toilet and sink access to wheelchair-using detainees. As a result, plaintiff has been and continues to be deprived the ability to toilet and use the sink on a basis equal to nondisabled inmates.

34. Indeed, when plaintiff requested to be transported to a bathroom, he was moved to a holding cell and was unable to fit his wheelchair near the toilet area. Because of the physical barriers present at Leighton and the Sheriff's inability to fashion some reasonable accommodation, plaintiff was unable to use the toilet on the same basis as a nondisabled inmate.

35. Plaintiff was harmed because he was not provided toilet and sink access when attending court at Leighton. In addition to the physical

and emotional damages, plaintiff was and continued to be deprived the opportunity and full participation in movement to the courthouse and access to toilets and sinks in violation of his rights under the ADA and Rehabilitation Act.

36. The refusal of defendants to correct the obvious physical barriers or provide reasonable accommodations to wheelchair-using detainees violates plaintiff's rights under the ADA and Rehabilitation Act.

37. Plaintiff hereby requests trial by jury on his claim for damages.

It is therefore respectfully requested that the Court fashion appropriate injunctive relief, that the Court award appropriate compensatory damages against all defendants, and that the Court award punitive damages against defendants Arreguin and Jefferson. Plaintiff also requests that the Court grant whatsoever other relief as may be appropriate, including an award of attorney's fees and costs.

/s/ Patrick W. Morrissey
ARDC No. 6309730
Thomas G. Morrissey
Thomas G. Morrissey, Ltd.
10257 S. Western Ave.
Chicago, Illinois 60643
(773) 233-7901
pwm@morrisseylawchicago.com

*Attorneys for Plaintiff*