IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EUGENE WESTMORELAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21 C 4330 |
| ) | |
| SHERIFF THOMAS DART, et al. ) | |
| ) | |
| Defendants. ) | |

### RULINGS ON MOTIONS IN LIMINE

In this order, the Court addresses the parties' motions *in limine*. The trial in this case will begin on November 1, 2023. The Court has considered the parties' written submissions and their arguments at the final pretrial conference held on October 22, 2023.

The Court notes that on the plaintiff's first motion *in limine*, the ruling set out below represents a significant change from the discussion by the Court at the final pretrial conference.

**A.     Plaintiff's motions**

1.     *Argument regarding "official with power to correct" / issue of vicarious liability.* In his first motion, plaintiff asks the Court to preclude defendants from arguing that there is no liability because the likelihood of harm to plaintiff from an upper bunk assignment was not "brought to the attention of an official with power to correct it." This motion brings to the fore the question of the basis on which the Sheriff—the primary named defendant on plaintiff's ADA Title II and Rehabilitation Act claims—may be held

liable.

In moving for summary judgment, plaintiff argued that the evidence "show[ed] that the Sheriff (a term plaintiff uses to encompass both [Sheriff] Dart and his subordinates, including the medical staff he contracts to provide medical care) acted with deliberate indifference." Pl.'s Mem. in Support of Mot. for Summ. J. at 8-9. Plaintiff thus contended—though without using the term—that vicarious liability is the governing rule. Defendants, for their part, did not address this point at all in response to plaintiff's motion. In its ruling on plaintiff's motion—which resulted in certain findings favorable to plaintiff under Fed. R. Civ. P. 56(g) but *not* in a grant of summary judgment in plaintiff's favor on any claim—the Court adopted a similar approach, addressing the question of deliberate indifference primarily by reference to the knowledge and actions of correctional personnel employed by the Sheriff. *See* Mem. Op. and Order (June 29, 2023) at 19-23. On the question of vicarious liability, the Court said the following:

> To recover compensatory damages under the ADA or RA, a plaintiff must show that the Sheriff acted with deliberate indifference. As noted earlier, this is an official-capacity suit against the Sheriff. But unlike in a case under 42 U.S.C. § 1983, the ADA and the RA provide for vicarious liability (the Sheriff does not argue otherwise). *See, e.g., Duvall*, 260 F.3d at 1141; *Morales v. City of New York*, No. 13-cv-7667, 2016 WL 4718189, at *7 (S.D.N.Y. Sept. 7, 2016); *Mapp v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, No. 15 C 3800, 2016 WL 4479560, at *4 (N.D. Ill. Aug. 25, 2016); *Phillips v. Tiona*, No. 10-cv-00334, 2011 WL 2198532, at *11 (D. Colo. Mar. 11, 2011); *Guynup v. Lancaster County*, No. 06-4315, 2008 WL 4771852, at *1 (E.D. Pa. Oct. 29, 2008). Thus it is sufficient if either Sheriff Dart or other Sheriff's personnel acted with deliberate indifference.

*Id.* at 19-20.

In other words, the Court adopted a vicarious liability approach to the question of deliberate indifference. The Court did so, however, without briefing directed to the point: plaintiff's summary judgment motion *assumed* vicarious responsibility (at least on the

2

issue of deliberate indifference), and defendants ignored the issue. But although defendants—somewhat inexplicably, in the Court's view—forfeited the point on summary judgment, that does not mean they forfeited it for all time. The issue is squarely teed up by the parties' competing jury instructions and by plaintiff's first motion *in limine*, as well as defendants' twelfth motion *in limine*.

At the final pretrial conference, the Court stated that it would adhere to its discussion of this point on summary judgment, though noting that the issue would be open for defendants to argue on appeal. On further reflection and review of relevant caselaw, however, the Court has come to the conclusion that this is an imprudent approach. It makes no practical sense for the Court, in determining the appropriate law to apply, to deal with the matter simply by sticking to its guns. That runs an undue risk of necessitating a do-over following an appeal. The Court has instead determined to do its best to ascertain the law accurately and try the case accordingly.

To cut to the chase, the Court finds persuasive the extensively-reasoned decision by Judge Thomas Durkin in *Ravenna v. Village of Skokie*, 388 F. Supp. 3d 999, 1004-1008 (N.D. Ill. 2019), and the analysis by Judge Edmond Chang in *Doe v. Bd. of Ed. of City of Chicago*, 611 F. Supp. 3d 516, 531 (N.D. Ill. 2020), that vicarious liability is not available in a suit like this one under the Rehabilitation Act and Title II of the ADA. Instead, for an institutional defendant like the Sheriff to be liable, the plaintiff must show that an official with authority to institute corrective measures was deliberately indifferent to the discrimination or failure to accommodate. *See also, e.g., Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (Title IX of the Education Amendments of 1972); *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012)

(Rehabilitation Act).

To be clear, however, this does not get defendants off the hook. First, plaintiff persuasively argues that a reasonable jury could find that correctional staff, or at least certain correctional staff, had the ability to remedy the allegedly discriminatory condition. *See* Pl.'s Mots. In Limine at 3-4. And the Court further notes that the Sheriff's "deliberate indifference" may be established in more than one way. In this regard, notice of a systemic or pattern of problems involving a particular form of discrimination against or failure to accommodate disabled detainees and failure to take action may be sufficient, somewhat akin to the way in which liability under *Monell* may be established in a suit under 42 U.S.C. § 1983. There's evidence in the present case that may be sufficient along these lines for plaintiff to carry his burden.

For these reasons, the Court denies plaintiff's first motion *in limine*, but only to the extent that plaintiff seeks to preclude argument by defendants about whether particular officials had the "power to correct" plaintiff's bunk assignment.

2 & 3. *Arguments regarding "mitigation of damages" and "contributory fault."* There is no viable argument by the defendant regarding "mitigation of damages" in this case, at least as that term is usually understood. In other words, there's no viable argument that plaintiff, once injured, could have mitigated his losses in any way. *See, e.g., Webber v. Butner*, 923 F.3d 479, 485 (7th Cir. 2019) ("[T]he question of whether mitigation of damages has occurred looks to the acts of the injured party only after the injury has occurred."); *Karahodzic v. JBS Carriers, Inc.*, 881 F.3d 1009, 1017 (7th Cir. 2018) ("[T]he duty to mitigate imposes a duty on the injured party to exercise reasonable diligence and ordinary care in attempting to minimize his damages after

injury has been inflicted."). Defendants make a point regarding whether plaintiff actually needs to be confined to a wheelchair, but that's not an argument about failure to mitigate; it's an argument about the nature and extent of the injury. See Def.'s Resp. to Pl.'s Mots. In Limine at 7 ("[T]he arguments [plaintiff] seeks to bar are unrelated to mitigation of damages"). In addition, as plaintiff notes, there is no "contributory negligence" defense in an ADA/Rehabilitation Act case. See, e.g., Doe v. St. John's Hosp. of the Hosp. Sisters of the Third Order of St. Francis, No. 16-3172, 2016 WL 5929330, at *3 (C.D. Ill. 2016) ("Contributory negligence is not an affirmative defense to intentional conduct."); see also Santiago v. Lane, 894 F.2d 218, 224 (7th Cir. 1990).

The real issue here is whether defendants can argue that plaintiff's own actions were a superseding cause of his injury. Specifically, they contend that plaintiff's decision to attempt to climb to an upper bunk was a superseding cause. The Court finds that this—at least for now—is a jury issue, and as defendants point out, it turns on the question of foreseeability. See, e.g., Hunter v. Mueske, 73 F.4th 561, 568 (7th Cir. 2023) ("Under the doctrine of proximate cause, a defendant is liable only for those harms she foreseeably risked by her wrongful actions."; "[W]hen the plaintiff's injury is caused not by a risk created by the defendant but by an unforeseeable intervening act, that act will operate to sever the defendant's liability.").

The Court therefore grants plaintiff's motions regarding "mitigation of damages" and "contributory negligence" arguments but overrules the motions to the extent they seek to preclude a superseding cause argument by defendants.

4. *Post-polio syndrome*. This motion is granted without objection by the defendants; they may not seek to elicit testimony or make argument that plaintiff was

5

ever diagnosed or treated for post-polio syndrome. Defendants may argue, however, that the weakness in plaintiff's left leg was caused by polio. (Plaintiff represented at the final pretrial conference that he is not attempting to preclude evidence or argument on this latter point.)

5. *Opinion and argument that plaintiff's spinal cord compression was a result of degenerative changes.* The Court overrules this motion; it's appropriately a matter for the jury to decide based on the weight it gives to conflicting testimony and argument.

6. *Opinion and argument that plaintiff had severe arthritis in his neck pre-fall.* The Court overrules this motion as well, for the reasons stated in defendant's response.

7. *Opinion and argument that plaintiff was capable of climbing to the upper bunk.* The Court grants this motion with respect to defense expert Dr. Bauer (no such opinion is in his report) but denies motion to the extent it seeks to preclude questioning of plaintiff—and appropriate argument, if supported by evidence—along these lines.

8. *Limiting testimony of Cermak/Stroger treating medical providers due to absence of Rule 26(a)(2)(C) disclosures.* Defendants did not serve Rule 26(a)(2)(C) disclosures regarding any of the treating medical personnel from Cermak or Stroger. Thus those witnesses' testimony will be limited to their own treatment and determinations; they may not render opinion testimony beyond that. *See* Fed. R. Civ. P. 37(c)(1).

9. *Plaintiff's felony convictions, sentences, and underlying circumstances.* Defendants may elicit (and plaintiff may preemptively elicit) the fact that plaintiff was convicted of three felonies. This testimony is admissible for impeachment purposes. The specific nature of the charges—they are sex offenses—has, at best, limited

probative value, and admission of that evidence would unfairly prejudice plaintiff in a way that far exceeds the limited probative value of that evidence. As the Seventh Circuit concluded in *Barber v. City of Chicago*, 725 F.3d 702 (7th Cir. 2013), "[p]resenting a § 1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions and other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Id*. at 714; *accord, Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992).

By contrast, the Court finds that plaintiff's anticipated date of release from imprisonment—which appears to be in late 2026 or early 2027—is relevant regarding the nature of his future care and the duration and cause of his emotional distress. There is some potential for unfair prejudice to plaintiff if this particular evidence is admitted, but this does not significantly outweigh the probative value of the evidence. Plaintiff's counsel may, of course, preemptively elicit this evidence on direct examination if they wish to do so.

Defendants apparently also want to elicit that plaintiff has to register as a sex offender and is barred from contact with his children and stepchildren until two years after he is paroled (i.e., until 2029) on the theory that it impacts the degree of any emotional distress that he claims as a result of the ADA/Rehabilitation Act violations alleged in this case. That sweeps too broadly. Simply asking for damages for emotional distress does not throw the doors open to everything in a person's background. And just as importantly, the particulars of this evidence pose a very significant likelihood of unfairly prejudicing the jury against plaintiff in a way that might

incline them to find against him or severely limit an award simply on the basis that he is a bad or unworthy person. Particularly given the limited duration of the legal prohibition at issue, the probative value of this evidence is not great, and it is significantly outweighed by the danger of unfair prejudice just described.

The Court makes this ruling, however, cognizant of the Seventh Circuit's admonition in *Barber* that if a plaintiff claims to have a generally disabling long-term emotional trauma or that "everything rotten in his life stems from the emotional trauma he experienced as a result of the defendants' actions," then he may open the door to further exploration of other events that might have contributed to this. *Id.* at 713-14. If defendants believe that plaintiff has done this via his testimony or otherwise, they may renew this issue with the Court but of course must do so outside the jury's presence.

10. *Plaintiff's prior employment.* The Court grants this motion; the evidence regarding the nature of plaintiff's pre-incarceration employment and the circumstances under which it was terminated is not relevant, and any probative value it might have is extremely minimal and would be significantly outweighed by the danger for unfair prejudice and confusion of the issues that its admission would cause. The Court finds utterly unpersuasive the proposition that plaintiff's employment as a teacher has any bearing on whether he should have realized that it was dangerous for him to try to climb to the upper bunk. (The Court also reemphasizes that plaintiff's attempt to climb to the upper bunk is relevant and material mainly to the extent it bears on the "superseding cause" issue referenced earlier; that's a matter of foreseeability, *not* contributory fault.)

11. *Testimony and argument regarding plaintiff's mental health history or treatment.* The Court grants this motion. Testimony by plaintiff about humiliation,

8

embarrassment, anger, and depressed feelings arising from the physical injuries and disability that he claims as a result of the events in this case does not, without more, open the door to the entirety of his mental health history. (The Court understands in this regard that plaintiff does not contend and will not present evidence that he has sought or will seek professional treatment for the claimed emotional distress.) But this ruling is subject to the same caveat expressed by the Court in connection with plaintiff's ninth motion *in limine*; more expansive testimony introduced by plaintiff on the emotional distress issue may open the door to further exploration of other life events that could contribute to his emotional distress.

      12.    *Federal financial assistance is not in dispute.* This motion is agreed to by defendants and is therefore granted.

      13.    *Explaining officer Arreguin's whereabouts between 2:00 and 3:00 PM.* The Court addressed this motion at the final pretrial conference by directing defendants to serve an updated and responsive answer to a particular interrogatory. The motion is therefore moot. (The updated answer has led to another motion, but that's a separate matter that is still being briefed.)

**B.**    **Defendants' motions**

      1.    *Criticism of grievance process.* Defendants ask the Court to preclude plaintiff "from criticizing any aspect of the grievance process." Defs.' Mots. In Limine at 5. In response, plaintiff says only that he may seek to admit the grievance he filed and the response by the Sheriff's designee. The Court agrees that these particular items may be admissible on various bases. But plaintiff does not argue any basis to introduce evidence "criticizing . . . the grievance process" and also said during the final pretrial

9

conference that he does not intend to introduce any such evidence. The Court grants the motion to that extent.

2. *Bill from Stroger Hospital.* In their second motion in limine, defendants ask the Court to preclude evidence relating to a bill from Stroger Hospital for treatment of plaintiff. In the course of their motion, defendants make a passing reference to Fed. R. Evid. 408, but this is not explained in any comprehensible way in the motion, and defendants also whiffed on this point when the Court asked about it during the final pretrial conference. The Court finds the point forfeited. As far as the rest of this motion is concerned, it appears that plaintiff has an available witness who can lay the business-record foundation for the bill. (Using trial time for that relatively straightforward and obvious point seems to the Court like a waste of trial time and the prospective witness's time, so the Court encourages the parties to reach an appropriate foundational stipulation.) The Court also notes that the treating physician is likely available to explain entries on the bill that might require explanation.

3. *Past and current CCDOC litigation.* As the Court stated at the final pretrial conference, plaintiff's contention regarding certain of the Sheriff's obligations under an "implementation plan" that arose from a consent decree in a lawsuit brought by the federal government is relevant and has reasonably significant probative value on the claims and defenses in this case. And the Court believes that any potential for unfair prejudice that might result from introducing evidence that this came from a federal government lawsuit can be resolved by the manner in which this is presented. For example, the Court suggested a stipulation (or, perhaps, judicial notice by the Court) that the Sheriff entered into a binding agreement to take certain relevant ADA-

10

compliance-related actions. The Court encourages the parties to reach an appropriate stipulation on this point that will eliminate the need to discuss the fact that the agreement arose from a lawsuit filed by the government and a consent decree entered in that lawsuit. They should report back to the Court on the first morning of trial.

        4.     *Treating Cook County and Sheriff's personnel as adverse witnesses.* The Court overrules this motion. Witnesses employed by the Sheriff or Cook County are sufficiently "identified with an adverse party" to permit plaintiff to ask them leading questions on direct if he chooses to do so. *See* Fed. R. Evid. 611(c).

        5.     *Conditions at the Jail.* In this motion, defendants seek to bar testimony regarding cleanliness of the Cook County Jail generally. In response, plaintiff points out that there is an issue in this case—effectively raised by defendants—whether plaintiff should have slept on his cell floor when a lower-bunk permit was not forthcoming. Plaintiff testified during his deposition that the floor was dirty. That testimony is relevant and admissible. The Court otherwise grants defendants' motion.

        6.     *"Limit[ing] Plaintiff's Presentation of the Evidence to Only Those Issues that Remain Outstanding."* This motion, as explained by defendants, seeks to bar testimony and an exhibit to the effect that plaintiff should have been assigned to a lower bunk and that failing to do so constituted a denial of access. The Court made findings to this effect under Fed. R. Civ. P. 56(g) when it ruled on summary judgment. But that does not place evidence or argument on this point out of bounds. And as plaintiff points out in his response, he is still required to establish the defendants' deliberate indifference, which essentially *requires* discussion of these points. The Court overrules defendants' motion.

11

7. *Allowing defendants Arreguin and Jefferson to be excused during portions of the trial and bar argument regarding their absence.* The Court grants this motion.

8. *Requiring Dr. Lazar to testify last during plaintiff's case.* The Court denies this motion.

9. *Evidence and argument about employee misconduct and violations of the defendants' policies and rules.* The Court overrules this motion. Defendants are correct that there is a difference between a constitutional or statutory violation, which is what plaintiff is required to prove, and a rule or policy violation. But that does not mean that personnel's violation of internal rules is irrelevant or otherwise inadmissible. Among other things, as the Court indicated in its summary judgment ruling, plaintiff appropriately may attempt to establish deliberate indifference by introducing evidence of rule and policy violations. *See generally Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009). That aside, the Court sees it as virtually impossible to try this case—on either side—without some reference to the Sheriff's (or potentially the County's) policies and rules. Defendants themselves contend that most of the personnel who interacted with plaintiff prior to his injury lacked authority under internal rules and/or practices to alter his bunk assignment. And evidence regarding rules and policies is relevant and admissible for other purposes as well. *See generally* Pl.'s Resp. to Defs.' Mots. In Limine at 6-7.

10. *Evidence of failure to train relating to inmate alerts and interaction with persons with disabilities.* The Court overrules this motion. Defendants contend that "failure to train" in and of itself does not give rise to a claim under the ADA provisions at issue here, but the Seventh Circuit has stated that "a failure to make reasonable

modifications in policies, practices, or procedures can constitute discrimination under Title II" of the ADA. *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018) (internal quotation marks omitted). That aside, certain personnel's claimed awareness of problems regarding bed assignments for detained persons with mobility issues and their claimed failure to take adequate steps to address this—including appropriate training—is relevant and admissible to show deliberate indifference, part of what plaintiff has to establish for his ADA claim.

      11.    *Evidence regarding general accessibility of Division 10 and Tier 2A.* The alleged conversation between plaintiff and officer Arreguin described at pages 14-15 of plaintiff's response is relevant and not subject to exclusion under Rule 403; it provides context for the interactions that led to plaintiff's injury. If requested by defendants, the Court will consider a limiting instruction regarding what specific conditions are (and are not) alleged as the basis for liability.

The Court has elsewhere noted the relevance and admissibility of the Sheriff's agreement in the context of litigation brought by the federal government regarding training of correctional staff on ADA-related issues. This evidence is relevant regarding the issue of deliberate indifference. As the Court has stated, it will exclude evidence that the agreement was made in the context of a lawsuit; it should simply be introduced as a binding agreement by the Sheriff. The Court directs the parties to confer to facilitate this.

Finally, aspects of the "FY19 Business Case," as well as the "Bed Control Key," both referenced by plaintiff at pages 12-13 of his response, are relevant regarding notice to defendant concerning problems with bed assignments for mobility-impaired

13

detainees. This, again, is relevant and admissible on the issue of deliberate indifference.

The Court denies defendants' motion *in limine* to that extent.

13. *Argument regarding vicarious liability on ADA/Rehabilitation Act claims.* The Court grants this motion for the reasons stated in connection with plaintiff's first motion *in limine*.

13. *Plaintiff's expert Gary Keclik.* This motion is largely moot; plaintiff does not intend to call Mr. Keclik to testify at trial on most of the points covered by defendants' motion. Any testimony that plaintiff elicits from Mr. Keclik will be limited to testimony that the cell entrance was not wide enough for a wheelchair to enter and that the dimensions of the cell were such that there would be insufficient space for two persons to inhabit it if there was a mattress on the floor. The Court finds that these opinions are relevant, are sufficiently supported, and were sufficiently disclosed. The Court therefore overrules the motion *in limine*.

14. *Plaintiff's expert Dr. Richard Lazar.* The Court overrules this motion. Dr. Lazar is sufficiently qualified, based on his training and experience, to render an opinion regarding the impact of comprehensive rehabilitation on plaintiff's recovery. There's nothing in the law or the rules of evidence that requires an expert to express absolute certainty on a particular point as a prerequisite to admissibility.

The Court overrules defendants' request to preclude opinion by Dr. Lazar regarding defendants' failure to send plaintiff to an off-site treatment facility. Defendants say this "is not a claim that Plaintiff has alleged in this case," Defs.' Mots. In Limine at 21, but this is not a "claim"; it's simply a point regarding damages. It wasn't

required to be specifically alleged in the complaint before testimony on the point may be admitted.

Finally, Dr. Lazar has sufficient qualifications and experience to testify regarding the cost of a life care plan for plaintiff. In particular, he has spent decades evaluating, treating, and assessing the needs of patients with spinal cord injuries. There's no legal requirement to be a "certified life care planner" before one is qualified to testify in this area. Dr. Lazar's methodology is sufficiently disclosed and reliable; defendants' points are matters for cross-examination, not a basis to exclude his testimony. Similarly, defendants' contentions about various alleged flaws in Dr. Lazar's reasoning, including his claimed failure to consider certain matters, are appropriate points for cross-examination but do not provide for exclusion of his testimony regarding plaintiff's current condition, his prognosis, and his current and future needs.

15. *Plaintiff's expert Sheila Vaughan.* This motion is moot; plaintiff has withdrawn Ms. Vaughan as a witness. *See* Dkt. no. 138 ¶ 10. Both sides have stated that they will not rely on her deposition testimony either. *Id.*

Date: October 27, 2023

_____
MATTHEW F. KENNELLY
United States District Judge